# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **MID-CONTINENT CASUALTY COMPANY,** | § | |
| *Plaintiff* | § | |
| | § | |
| | § | **Case No. 1:21-cv-00520-LY** |
| **v.** | § | |
| | § | |
| **JTH CUSTOMS, INC.,** | § | |
| **DOUGLAS M.  VANDER PLOEG,** | § | |
| **LAURIE VANDER PLOEG, and** | § | |
| **JEFF L. TURNER,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:     **THE HONORABLE LEE YEAKEL**
        **UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiff Mid-Continent Casualty Company's Motion for Summary Judgment, filed February 15, 2022 (Dkt. 26); Vander Ploeg Defendants' Opposed Emergency Motion to Stay or Alternatively for a Continuance, filed February 21, 2022 (Dkt. 27); Mid-Continent Casualty Company's Motion to Strike, filed March 11, 2022 (Dkt. 36); and the associated response and reply briefs. The District Court referred the motions to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas. Dkt. 39.

## I.      Background

Plaintiff Mid-Continent Casualty Company ("MCC") brings this action for a declaratory judgment that it has no duty to defend or indemnify Defendants JTH Customs, Inc. ("JTH") and Jeff L. Turner in an underlying state court action.

## A.  The Policies

MCC issued three general liability insurance policies to JTH: (1) Policy No. 04-GL-000984647, effective October 23, 2017 to October 23, 2018; (2) Policy No.04-GL-001007160, effective October 23, 2018 to October 23, 2019; and (3) Policy No.04-GL-001028282, effective October 23, 2019 to October 23, 2020 (the "Policies"). Dkt. 26 at 3. MCC asserts that the Policies "only afford coverage to JTH and its executive officers and directors (with respect to their duties as officers and directors)." The Policies provide coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Dkt. 1-1 at 11 ¶ I(A)(1). The Policies limit coverage to "bodily injury" and "property damage" "caused by an 'occurrence' that takes place in the 'coverage territory.'" *Id.*

The Policies contain several pertinent exclusions. Pursuant to endorsements, Section I(A)(2), "Exclusions," states in part:

> This insurance does not apply to:
>
> **j.  "Property damage" to: . . .**
>
> > (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arise out of those operations. This exclusion does not apply to liability assumed under a sidetrack agreement; or
> >
> > (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. This exclusion does not apply to liability assumed under a sidetrack agreement or to "property damage" included in the "products-completed operation hazard". *Id.* at 48.
>
> **l.  Defective Work**
>
> "Defective Work" includes any and all costs associated with the removal or replacement of the defective, deficient or faulty work. *Id.* at 51.

The Policies also include the following definitions:

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. *Id.* at 25 § V.

22(a)(1). "Your work" means: "Work or operations performed by you or on your behalf;" . . . . *Id.* at 26 § V.

23. "Defective Work" means "Your Work" that is defective, deficient, non-conforming, not in accordance with plans and specifications, fails to satisfy applicable building code(s), fails to meet industry practice standards, is not fit for its intended use, not performed in a workman like manner or is faulty, and is included in the products-completed operations hazard. *Id.* at 51 ¶ V.

## B.  The Underlying Suit

Douglas M. Vander Ploeg and Laurie Vander Ploeg (the "Vander Ploegs")[1] entered into a

contract with JTH, a homebuilder, to "build and/or design in part a house" on their property located

---

[1] MCC joined the Vander Ploegs in this suit because "their rights, if any, may be impacted by the expeditious resolution of coverage." First Amended Complaint ¶ 19.

at 14732 Hornsby Hill Road, Austin, Texas 78734 (the "Property"). Underlying Plaintiff's Third Amended Petition ¶ 6. The Vander Ploegs allege that JTH was acting as the builder and the general contractor for the construction. *Id.* ¶ 7. They allege that the contract provided that construction on the home would be substantially completed by February 1, 2016. *Id.* ¶ 6. Although the construction was not completed by that date, the Vander Ploegs moved into their house in December 2017. *Id.* The Vander Ploegs allege that, after moving into the house, they began to "experience problems with the construction of the Property," including mold, electrical issues, drainage and masonry issues, and other defects with the windows, doors, swimming and entry pools, and fountain. *Id.* ¶¶ 7-8. The Vander Ploegs further allege that JTH failed to properly supervise its employees and subcontractors. *Id.* ¶ 10.

On November 20, 2019, the Vander Ploegs filed suit against JTH in Texas state court, asserting claims for breach of contract and breach of warranty. *Vander Ploeg v. JTH Customs, Inc.*, No. D-1-GN-19-008119 (98th Dist. Ct., Travis County, Tex. Nov. 20, 2019) (the "Underlying Suit"). Dkt. 1-2. The Vander Ploegs later added Turner, who owns JTH, and four other companies that worked on the construction of the home. Dkt. 26-1 at 172. In their Third Amended Petition, the Vander Ploegs assert claims for breach of contract, breach of warranties, conversion, common law and statutory fraud, breach of fiduciary duty, money had and received, and unjust enrichment, as well as violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), the Texas Property Code, and the Texas Uniform Fraudulent Transfers Act ("TUFTA").

### C.  The Coverage Dispute

JTH and Turner allege that they contacted MCC regarding insurance coverage after the Vander Ploegs filed the Underlying Suit, but MCC responded that the events alleged in the suit were excluded from the Policies. Dkt. 35 ¶ 7. MCC is defending JTH and Turner in the Underlying Suit subject to a reservation of rights and has filed this action to obtain a declaration that it has no

ongoing coverage obligations. Dkt. 26 at 2. The Underlying Suit is set for trial on August 22, 2022. Dkt. 27 at 3.

MCC filed this action on June 15, 2021. On September 22, 2021, the Vander Ploegs filed their first motion to stay, asking the Court to stay the case for ninety days or until the receivership application in the Underlying Suit was resolved, whichever occurred first. Dkt. 13. The District Court denied the motion without prejudice. Dkt. 16. MCC then filed a motion for summary judgment and the Vander Ploegs filed a second motion to stay, the two motions now before the Court. Dkts. 26, 27.

JTH and Turner moved to join the Vander Ploegs' motion to stay. Dkt 31. After filing an Answer to the Amended Complaint, JTH and Turner filed a separate Counterclaim on March 8, 2022, which MCC has moved to strike as untimely. Dkts. 35, 36.

## II.    Texas Insurance Law

Whether an insurer has a duty to defend an insured is a question of law. *Siplast, Inc. v. Emps. Mut. Cas. Co.*, 23 F.4th 486, 492 (5th Cir. 2022). In this diversity case, "Texas law governs all substantive contractual questions." *Cleere Drilling Co. v. Dominion Exploration & Prod., Inc.*, 351 F.3d 642, 646 (5th Cir. 2003).

Under Texas law, "an insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify." *Siplast*, 23 F.4th at 492. These duties are distinct, and the duty to defend is broader. Therefore, "the insurer may have a duty to defend but, eventually, no obligation to indemnify." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490-91 (Tex. 2008). The duty to indemnify "arises only after the policyholder's underlying liability has been established." *Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329 (5th Cir. 2022) (citing *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)).

Whether an insurer has a duty to defend is determined under the "eight-corners rule." *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 494 (Tex. 2020). "The 'four corners' of the petition and the 'four corners' of the policy together comprise the 'eight corners' that give the rule its name." *Id.* at 494-95.

> The eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from the terms of the policy and the pleadings of the third-party claimant. Resort to evidence outside the four corners of these two documents is generally prohibited.

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006).

When considering whether a third-party complaint triggers a duty to defend, the focus is on "the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam). "If the underlying pleadings allege facts that may fall within the scope of coverage, the insurer has a duty to defend; if the pleading only alleges facts excluded by the policy, there is no duty to defend." *Siplast*, 23 F.4th at 493. A third-party complaint must both allege and seek damages "for an event potentially covered by the policy." *Id.* (quoting *D.R.-Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)).

When deciding whether a third-party complaint alleges a claim covered by the duty to defend, courts "construe the pleadings liberally" and "resolve all doubts regarding the duty to defend in favor of the duty." *Zurich*, 268 S.W.3d at 491 (citations omitted).

> The initial burden of proof is on the insured to show that a given claim is covered by the insurance policy; however, when the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply. For both the third-party complaint and the insurance policy, if there are any ambiguities, the tie goes to the insured.

*Siplast*, 23 F.4th at 494 (cleaned up); *see also Gonzalez v. Mid-Continent Cas. Co.*, 969 F.3d 554, 557 (5th Cir. 2020) ("When the language of an insurance policy is susceptible to more than one construction, it should be construed strictly against the insurer and liberally in favor of the insured.") (internal quotation marks omitted).

### III.   Motion to Stay

The Vander Ploegs ask the Court to stay this action and not rule on MCC's Motion for Summary Judgment until the Underlying Suit is resolved. The Vander Ploegs also argue that discovery is necessary to resolve the issues raised in MCC's summary judgment motion.[2] MCC opposes the Motion to Stay, arguing that it is well-established under federal and Texas law that a court may determine an insurer's duty to defend before resolution of an underlying state court proceeding. MCC also points out that the Vander Ploegs have not requested any discovery.

### A.  Duty to Indemnify

The duty to indemnify is determined by the "actual facts establishing liability in the underlying suit." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997)). Therefore, courts "only consider[] the duty-to-indemnify question justiciable after the underlying suit is concluded, unless 'the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004) (quoting *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)). Therefore, if MCC has a duty to defend, the duty to indemnify will not be justiciable at this time.

---

[2] The Vander Ploegs moved in the alternative to continue the summary judgment deadlines until after discovery has been completed, but subsequently filed a response to MCC's Motion for Summary Judgment. Dkt. 38. Accordingly, their motion to continue deadlines is dismissed as moot.

**B.  Duty to Defend**

In contrast to the duty to indemnify, the duty to defend may be adjudicated when an insured is sued because "an insurer's duty to defend is determined solely by the facts alleged in the petition and the terms of the policy." *Colony*, 647 F.3d at 253 (citing *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009)). When considering a motion to stay a declaratory judgment action while a related state court case is pending, courts must consider fairness, federalism, and efficiency, and may be guided by several nonexclusive factors. *See Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390-92 (5th Cir. 2003) (interpreting factors set out in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)). Those factors are:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and the witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id.* at 388 (quoting *Trejo*, 39 F.3d at 590-91).

Courts have consistently denied motions to dismiss or stay in cases such as this, where an insurer seeks a declaratory judgment that it has no duty to defend after a third party sues the insured in another proceeding, because the proceedings are not "truly parallel." *See, e.g.*, *Cincinnati Specialty Underwriters Ins. Co. v. Henry Z Roofing, LLC*, No. 3:20-CV-0606-D, 2020 WL 2745656, at *4-6 (N.D. Tex. May 26, 2020) (declining to dismiss case after determining that all *Trejo* factors weighed against abstention); *cf. Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 374 (5th Cir. 1998) (reversing dismissal).

8

MCC is not a party to the state proceeding and cannot be joined under Texas law.[3] Therefore, MCC's contractual obligation to defend JTH will not be decided in the Underlying Suit. The Court's ruling on MCC's duty to defend, moreover, has no direct bearing on the outcome of the Underlying Suit. *See Agora*, 149 F.3d at 373; *Nautilus Ins. Co. v. S. Vanguard Ins. Co.*, 899 F. Supp. 2d 538, 551 (N.D. Tex. 2012).

Discovery generally is unnecessary to determine whether an insurer has a duty to defend because the "eight-corners rule" prohibits consideration of extrinsic evidence except in limited circumstances, which the Vander Ploegs have not argued are present here. *See Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 203 (Tex. 2022) (holding that extrinsic evidence may be considered only when it "(1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved"). The Court finds that the Vander Ploegs have not established that the balance of the *Trejo* factors, or principles of federalism, fairness, and efficiency, support staying consideration of the duty to defend.

## C. Conclusion as to Motion to Stay

Pursuant to the recommendations below, the undersigned Magistrate Judge recommends that the motion to stay be granted as to the duty to indemnify and denied as to the duty to defend.

## IV.    Motion to Strike

The Court next considers MCC's motion to strike JTH and Turner's counterclaim. MCC contends that the Court should strike the counterclaim pursuant to Rule 15(a)(2) because defendants filed it without first seeking MCC's consent or filing a motion for leave. MCC further argues that allowing JTH and Turner to amend would be futile because (1) the breach of contract

---

[3] *See* TEX. R. CIV. P. 51(b) (prohibiting joinder of insurance company by injured third party in tort action except where insurer is liable by statute or contract to person injured).

counterclaim would be subsumed by a decision on the declaratory judgment action; (2) the fraud and fraudulent inducement allegations fail to state a claim; and (3) the alleged violation of the Texas Insurance Code depends on a threshold breach of contract and cannot be asserted before a determination on that issue.

JTH and Turner respond that the counterclaim is an original cause of action. In the alternative, they argue that the factors relevant under Rule 15(a) weigh in favor of granting leave to amend.

## A. Legal Standard

As relevant here, Rule 15(a) permits a party to amend its pleading "once as a matter of course" within 21 days after serving it, but afterward "only with the opposing party's written consent or the court's leave." In the latter circumstance, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). A district court must provide a "substantial reason" to deny a party's request for leave to amend, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) (citation omitted). An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. *Id.* at 478.

## B. Analysis

Although Defendants JTH and Turner did not file a motion for leave to amend, the Court construes their response to the Motion to Strike as including a motion seeking leave to amend pursuant to Rule 15.[4]

---

[4] JTH and Turner's suggestion that a counterclaim is not subject to Rule 15 because it is an original cause of action is without merit. *See* FED. R. CIV. P. 13 advisory committee's note to 2009 amendment ("An amendment to add a counterclaim will be governed by Rule 15."); *Acadia Ins. Co. v. Hinds Cnty. Sch. Dist.*, 582 F. App'x 384, 393 (5th Cir. 2014) (applying Rule 15 to motion for leave to amend pleading to include counterclaim).

The counterclaim, an amendment to JTH and Turner's Answer to the Amended Complaint, was served 29 days after their Answer. Accordingly, it was not timely filed under Rule 15(a)(1).

This is JTH and Turner's first request to amend their answer, and the case is in its early stages; no discovery has been taken and no trial date is set. The Court thus finds that granting leave to amend would not result in undue delay or prejudice. Nonetheless, the Court must consider whether each of the counterclaims would be futile.

### 1.   Fraud and Fraudulent Inducement

To state a claim for fraud under Texas law, a party must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). In their counterclaim, JTH and Turner merely recite the elements of fraud and fail to identify any fraudulent statements or otherwise include factual support for their claim. Therefore, permitting JTH and Turner to amend to include a counterclaim for fraud and fraudulent inducement would be futile.

### 2.   Breach of Contract

MCC contends that the breach of contract counterclaim is subsumed by the declaratory judgment action, but cites no authority in support. Some courts have found that a counterclaim for declaratory judgment is redundant in a breach of contract case because all issues in in the declaratory judgment would be fully resolved by a ruling on the breach of contract claim. *See, e.g.*, *Kougl v. Xspedius Mgmt. Co. of DFW, L.L.C.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005); *Great Am. Ins. Co. v. Goin*, No. 3:15-cv-75-L, 2017 WL 4238698, at *4 (N.D. Tex. Sept. 25, 2017) ("This court has previously declined in its discretion to adjudicate declaratory judgment actions that are duplicative of other claims in the same case."). But this case presents the converse: a breach of contract counterclaim asserted in a declaratory judgment action. At a minimum, the

11

breach of contract counterclaim seeks different relief than a declaratory judgment. *Republic Servs., Inc. v. Texas Ecological Servs., Inc.*, 118 F. Supp. 2d 775, 776 (S.D. Tex. 2000) (stating that "a declaratory judgment cannot possibly lead to the 'exact same relief' as the other causes of action because it would only result in a declaration of rights, not a money judgment"). Because the claim would provide different relief, it is neither redundant nor futile.

### 3. Texas Insurance Code

Finally, MCC argues that the Court should not grant leave for JTH and Turner to amend their answer to add the Texas Insurance Code counterclaim because courts have severed and abated similar extra-contractual claims until after determination of underlying liability. This argument does not establish that leave should be denied because the amendment would fail to state a claim under Rule 12(b)(6). Because MCC does not argue that the counterclaim should be dismissed under Rule 12, the Court finds that this amendment would not be futile.

## C. Conclusion as to Motion to Strike

For the foregoing reasons, the undersigned Magistrate Judge recommends that the District Court grant MCC's Motion to Strike as to the fraud and fraudulent inducement counterclaim and deny it as to the breach of contract and Texas Insurance Code counterclaims.

## V.   Motion for Summary Judgment

In its motion for summary judgment, MCC argues that it has no duty to defend or indemnify because the Vander Ploegs assert only claims arising from JTH's defective work, which are barred by the defective work exclusion to the Policies. Dkt. 26 at 11. In the alternative, MCC argues that the property damage exclusions apply and bar coverage for property damage to any part of the Property because JTH was the general contractor working on the entire property. *Id.* at 15.

JTH, Turner, and the Vander Ploegs respond that at least some of the damage alleged is not the result of defective work and therefore is not subject to the defective work exclusion. Dkt. 37

at 14; Dkt. 38 at 15. The Vander Ploegs also argue that subcontractors performed defective work, and subcontractor work is not included in the defective work exclusion. Dkt. 28 at 17. Defendants further argue that damage to parts of the property where nondefective work was performed is not subject to the damage to property exclusions under Texas law, and even if it were, the exclusion applies only to damages arising while the insured is working on the project, which is not the case here. Dkt. 37 at 15-17; Dkt. 38 at 20.

## A. Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*,

476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## B. Defective Work Exclusion

The defective work exclusion to the Policies bars coverage for "any and all costs associated with the removal or replacement of the defective, deficient or faulty work." MCC relies on *Mid-Continent Cas. Co. v. McCollum Custom Homes, Inc.*, 461 F. Supp. 3d 516 (S.D. Tex. 2020), *appeal dismissed*, No. 20-20439, 2020 WL 8569300 (5th Cir. Oct. 28, 2020), to support its argument that the defective work exclusion applies to bar coverage for all of the Vander Ploegs' allegations. In *McCollum*, however, the court found that an identical exclusion barred coverage for only some of the damage alleged by the insured. Specifically, the Court found that damages such as floor crowning were excluded because each of the alleged causes "could only be attributed to [the contractor's] work on the floors being 'defective, deficient, non-conforming,' or 'fail[ing] to meet industry practice standards.'" *Id.* at 526. In contrast, the court found that issues such as cracks, water leaks from the roof and windows, and a "displaced pool" may not have been excluded because the petition did not suggest that they "were themselves 'defective,' 'deficient,' 'faulty,' etc." *Id.* The court found that there was no duty to defend because the damages were subject to another exclusion not at issue here (i.e., movement of the earth). *Id.* at 529.

Here, while most of the allegations in the Underlying Suit concern the cost of repairing or replacing JTH's defective or substandard work, the Vander Ploegs allege some damages to work

not itself defective, deficient, or faulty. For example, they allege that door and window leaks have caused "water damage to the flooring," rather than alleging that defective work on the flooring itself resulted in damage. Underlying Plaintiff's Third Amended Petition ¶ 8. Under the reading of the exclusion and Petition most favorable to the insureds, the allegations of water damage are not excluded because the exclusion only bars coverage for the cost of repairing or replacing the defective work itself, not the cost of resolving additional damage. The Court therefore finds that the defective work exclusion does not bar coverage for all damages the Vander Ploegs allege.

## C. Property Damage Exclusions

The damage to property exclusions, also known as "your work" exclusions, are a type of business-risk exclusion commonly found in Commercial General Liability insurance policies. *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 211 (5th Cir. 2009) (citing *Hartford Casualty Co. v. Cruse*, 938 F.2d 601, 603 (5th Cir. 1991)). Such provisions "are designed to exclude coverage for defective work performed by the insured." *Id.* While the general purpose of business-risk exclusions is to preclude coverage for damage to an insured's own work, the actual coverage for the type of risk depends on the policy's specific language. *Mid-Continent Cas. Co. v. Krolczyk*, 408 S.W.3d 896, 902 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13-14 (Tex. 2007)).

MCC argues that exclusions I(A)(2)(j)(5) and (j)(6) bar coverage for all damages alleged in the underlying action. The Fifth Circuit interpreted identical exclusions in *JHP*, 557 F.3d 207, and that interpretation is instructive here. In *JHP*, the insured argued that the property damage exclusion in Section j(6) applied only to damage that was the subject of the defective work (the exterior portions of condominiums that were not adequately waterproofed), not to the parts of the project that were subject to nondefective work (aspects of the condominiums' interior). *Id.* at 214. The Fifth Circuit agreed, stating that Section j(6)

> bars coverage only for property damage to parts of a property that were themselves the subject of defective work by the insured; the exclusion does not bar coverage for damage to parts of a property that were the subject of only nondefective work by the insured and were damaged as a result of defective work by the insured on other parts of the property.

*Id.* at 215.

As stated above, the Vander Ploegs allege that defective work caused damage to parts of the Property with nondefective work, such as damage to interior finishes, walls, and flooring due to leaking windows and doors. Underlying Plaintiff's Third Amended Petition ¶ 8. Applying *JHP*, the Court finds that Section j(6) is inapplicable because the Vander Ploegs have alleged damage to nondefective work. *Accord Amerisure Mut. Ins. Co. v. McMillin Texas Homes*, LLC, No. SA-20-CV-01332-XR, 2022 WL 686727, at *10 (W.D. Tex. Mar. 8, 2022) (holding Sections j(5) and j(6) inapplicable because "factual allegations contemplate property damage to parts of the homes that may not have been the subject of defective work" by general contractor); *Krolczyk*, 408 S.W.3d at 904 (holding Section j(6) inapplicable where petition alleged that defective construction of road base damaged nondefective road surface).

With respect to Section j(5), the court held in *JHP* that "the use of the present tense 'are performing operations' in exclusion j(5) makes clear that the exclusion only applies to property damage that occurred during the performance of construction operations." In their Petition, the Vander Ploegs do not state the specific date the damage occurred, but allege: "After moving into the house and Property, Vander Ploeg began to experience problems with the construction of the Property." Underlying Plaintiff's Third Amended Petition ¶ 8. Thus, at a minimum, a fact question exists regarding whether any of the alleged damage occurred after the project's completion. *See Greystone Multi-Fam. Builders, Inc. v. Gemini Ins. Co.*, No. CV H-17-921, 2018 WL 3080890, at

*11 (S.D. Tex. Feb. 26, 2018), *R. & R. adopted in part and rejected in part on other grounds*, No. H-17-921, 2018 WL 1579477 (S.D. Tex. Mar. 30, 2018).

Because none of the other exclusions argued by the parties would bar all claims asserted by the Vander Ploegs, the Court does not address them as to the duty to defend. *See Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 745 (5th Cir. 2011), *certified question answered*, 370 S.W.3d 377 (Tex. 2012) ("If the petition potentially includes even one covered claim under the policy, the insurer must defend the entire lawsuit.") (citing *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008)).

Applying the "eight corners" rule and construing the Petition liberally, at least one claim falls within the scope of the Policies, thus triggering MCC's duty to defend JTH and Turner in the Underlying Suit. Accordingly, MCC's Motion for Summary Judgment should be denied.

## VI.    Recommendation

In sum, the undersigned Magistrate Judge **RECOMMENDS** that the District Court:

1. **DENY** MCC's Motion for Summary Judgment (Dkt. 26);

2. **GRANT IN PART and DENY IN PART** the Motion to Stay (Dkt. 27). The undersigned recommends that the District Court **GRANT** the Vander Ploegs' request to stay consideration of the duty to indemnify and **DENY** their request to stay consideration of the duty to defend; and

3. **GRANT IN PART and DENY IN PART** the Motion to Strike (Dkt. 36). The undersigned recommends the District Court **GRANT** MCC's request to strike the fraud and fraudulent inducement counterclaim and **DENY** its request to strike the remaining counterclaims.

The Court further **ORDERS** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 4, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE